Andrew C. KURINSKY, Jr.; Donna A. Kurinsky; and Katherine A. Kurinsky, a Minor, by and through her parent, natural guardian and next friend, Andrew C. Kurinsky, Jr., Plaintiffs–Appellants,

v.

UNITED STATES of America, and the named persons each individually and as a Special Agent of the Federal Bureau of Investigation; Joseph L. Ramsak; William D. Hann; Barry Gummow; Bion St. Bernard; Kevin D. Burnett; Dan Elven Estrem; Gary L. Hall; Albert L. McGinty, Jr.; James M. Owens; Lance R. Sakurada and James J. White, Defendants–Appellees.

No. 93–3886.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 1, 1994.

Decided Aug. 26, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 1, 1994.

---

George W. Palda (argued) and Larry S. Gordon (briefed), Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for plaintiffs-appellants.

Iden Grant Martyn, Asst. U.S. Atty., Office of the U.S. Atty., Cleveland, OH, Barbara L. Herwig, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Jonathan Weinberg (briefed), Sushma Soni (argued), U.S. Dept. of Justice, Civ. Div., and Nina S. Pelletier, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for defendants-appellees.

Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

RALPH B. GUY, JR., Circuit Judge.

In this Federal Tort Claims Act ("FTCA" or "Act") case, Andrew C. Kurinsky, Jr.; his wife, Donna A. Kurinsky; and Katherine A. Kurinsky, a minor, appeal the dismissal of their action against the United States and eleven special agents of the Federal Bureau of Investigation.[1] The district court's dismissal was grounded in the exception found in 28 U.S.C. § 2680(c) for claims based on the detention of goods and merchandise by law enforcement officers. The Kurinskys also appeal the dismissal of their *Bivens* claims against the individual agents, which the court found were time-barred. For the reasons that follow, we find the district court's reading of § 2680(c) to be in error. Therefore, we reverse in part and affirm in part.

**I.**

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

The Kurinskys own and operate a business known as Arcade Sound, which manufactures, recycles, repairs, and distributes cable television equipment and related electronic equipment. Prior to March 1989, the FBI suspected that Andrew Kurinsky was violating 47 U.S.C. § 553(a)(2), which prohibits the unauthorized reception of cable services, and was committing wire fraud, in violation of 18 U.S.C. § 1343. As a result, the FBI placed Kurinsky under surveillance. On March 27, 1989, based on information supplied by the FBI, a magistrate judge issued a search warrant for the Arcade Sound premises. On March 29, the FBI agents executed the search warrant and seized cable signal descramblers, cable television converters, assorted hardware, personal computers, numerous documents, and two handguns. According to the Kurinskys, no inventory of the seized goods was made while the property was removed; the property was mishandled and damaged; and common electronic components, which are not unique to the cable television industry, were taken. The Kurinskys also allege that, in the course of the agents' execution of the warrant, they were subjected to great emotional distress, embarrassment, and humiliation. The United States claims that the property was returned to the Kurinskys between April 7, 1989, and October 4, 1990. The Kurinskys claim that not all of the property was returned.

On October 29, 1992, the Kurinskys filed a six-count action against the United States and the FBI Agents, alleging damages stemming from the execution of the search warrant. Counts I, II, and III are brought pursuant to the FTCA. Count IV alleges a violation of the due process clause of the Fifth Amendment, and counts V and VI are *Bivens* claims against the FBI agents under the Fourth and Fifth Amendments.

---

1. The district court, in its opinion, listed twelve agents as defendants. The "extra" agent, Linda T. Berry, was not named in the Kurinskys' amended complaint, so we have not identified her as one of the defendants on appeal.

On separate motions brought by the United States pursuant to Fed.R.Civ.P. 12(b)(1), and by the FBI agents as a group pursuant to Fed.R.Civ.P. 12(b)(1) and (6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56(b), the district court found that the FTCA claims were barred by the exception to the Act's waiver of sovereign immunity contained in § 2680(c). The court also found that sovereign immunity barred the Fifth Amendment due process claim for the taking of the Kurinskys' property. Finally, the court dismissed the *Bivens* claims upon a finding that they were not brought within the two-year limitations period for the bringing of such actions.

## II.

The FTCA provides generally that the United States shall be liable, to the same extent as a private party, "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The Act's broad waiver of immunity, however, is subject to enumerated exceptions. 28 U.S.C. § 2680(a)-(n). One of those exceptions, § 2680(c), provides that § 1346 shall not apply to

> [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

The Kurinskys insist that § 2680(c) applies only to property losses involving customs or tax agents, or other law officers acting in the aid of the enforcement of customs or tax laws. *See Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 825 (2d Cir. 1985) (Oakes, J., concurring); *A–Mark, Inc. v. United States Secret Service*, 593 F.2d 849,

851 (9th Cir.1978) (Tang, J., concurring). Because the FBI's search and seizure was unrelated to customs or tax laws, the Kurinskys maintain the exception does not apply here.

In the government's view, and as the district court found, § 2680(c) applies to exclude a claim for the damage here because it was incurred in the course of a search and seizure undertaken by a "federal law-enforcement officer." According to the government, since FBI agents are "law enforcement officers" and this suit arose out of "the detention of [the Kurinskys'] goods or merchandise," the district court's order of dismissal was not in error.

While this court has applied § 2680(c) to IRS agents, we have yet to address its application to other law enforcement officers. Similarly, the Supreme Court has refused to determine whether § 2680(c) applies where the officers who detained the property were not customs or tax officials and were not acting in a customs or tax capacity. *See Kosak v. United States*, 465 U.S. 848, 852 n. 6, 104 S.Ct. 1519, 1522 n. 6, 79 L.Ed.2d 860 (1984). Therefore, we begin our inquiry into the scope of § 2680(c) on a clean slate.

■ It is well settled that the first step in determining the meaning of a statute is to review the language of the statute itself. *United States v. Johnson*, 855 F.2d 299 (6th Cir.1988). " '[O]nly the most extraordinary showing of contrary intention from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.' " *Id.* at 305 (quoting *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)).

■ According to the government, the term "any other law-enforcement officer" was included in § 2680(c) as a sort of catch-all provision. The principle of *ejusdem generis*,[2] however, suggests that such a general

---

**2.** This term is defined in Black's Law Dictionary 464 (5th ed. 1979) as follows:

Of the same kind, class, or nature. In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are

to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.

(Citations omitted.)

term should be understood in light of the specific terms that surround it. *Hughey v. United States,* 495 U.S. 411, 419, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990). Similarly, under the principle of statutory construction known as *noscitur a sociis,*[3] a general term is interpreted within the context of the accompanying words "to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Here, the specific terms "tax" and "customs duty" indicate that Congress was concerned with those detentions, however they might arise, occurring within the context of tax and customs activities. As Judge Tang observed:

> The governmental function of assessing and collecting customs duties necessarily requires some period of detention when the imported item is inspected for purposes of evaluation. A similar situation often arises when property must be levied against for tax purposes. It follows that where the ultimate act of assessing the tax or duty is rendered exempt, the incidental activity of detention must also be protected. § 2680(c) contains parallel clauses which cover "the assessment or collection of *any tax or customs duty,* or the detention of any goods or merchandise by *any officer of customs or excise* or any other law-enforcement officer." The clauses both dwell exclusively on customs and taxes, except for the final reference to other law-enforcement officers. The "any other law-enforcement officer" phrase should be viewed as Congress' recognition of the fact that federal officers, other than customs and excise officers, sometimes become involved in the activity of detaining goods for tax or customs purposes.

*A–Mark,* 593 F.2d at 850–51 (Tang, J., concurring) (emphasis in original).

█  In order to interpret § 2680(c) as the government urges, we would have to focus selectively on specific provisions of that section without reading it in its entirety. The Supreme Court has observed, however, that "[w]e do not ... construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). Moreover, even if § 2680(c) were read piecemeal, it would not convey the meaning suggested by the government. Significantly, Congress chose to use the word "detention" instead of the word "seizure." A detention is generally associated with a period of temporary custody or delay. It carries no connotation of permanent custody, nor does it necessarily suggest an adversarial interest insofar as ownership is concerned. It is a term often associated with an ongoing investigation. A seizure, on the other hand, must be viewed as a term of art in this context. BLACK'S LAW DICTIONARY 1219 (5th ed.1979) defines seizure as "[t]he act of taking possession of property, *e.g.,* for a violation of law or by virtue of an execution." In common with a "detention," a "seizure" may be temporary and involve the goods of another; however, a seizure has an "after-the-fact" quality not associated with a detention. When goods are seized pursuant to a lawful search, their relevance to a legal proceeding already has been predetermined. Similarly, · if goods are seized pursuant to an execution or forfeiture, there is no intention to return. The seizure is adversarial to the ownership interest of the person from whom the property is seized. Had Congress intended to except from the reach of the FTCA damages arising out of seizures, we believe it would have said so. Instead, Congress elected to use the word detention, and to be consistent with this language, § 2680(c) must be read as only applying to law enforcement officers engaged in activities with a nexus to the collection of taxes or customs duties.

This reading is supported by what little legislative history there is on § 2680(c). The Senate Report to the Legislative Reorganization Act of 1946 had the following to say about the tort claim exceptions:

> tur a sociis", the meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it.

---

**3.** BLACK'S LAW DICTIONARY, *supra* note 2, at 956, defines this term as follows:

> It is known from its associates. The meaning of a word is or may be known from the accompanying words. Under the doctrine of "nosci-

This section specifies types of claim[s] which would not be covered by the title. They include ... claims which relate to certain governmental activities which should be free from the threat of damage suit, or for which adequate remedies are already available. These exemptions cover claims arising out of the loss or miscarriage of postal matter; the assessment or collection of taxes or assessments; the detention of goods by customs officers....

*A–Mark,* 593 F.2d at 851 (Tang, J., concurring) (quoting S.Rep. No. 1400, 79th Cong., 2d Sess. 33 (1946)). The report makes no mention whatsoever of an exemption for any and all seizures by law-enforcement officers. When Alexander Holtzoff, then Special Assistant to the Attorney General, appeared before the Senate Subcommittee weighing passage of the FTCA in 1940, he explained:

The ... exception relates to claims arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer. There are various tax laws providing the machinery for recovering back any tax that has been paid but was not properly owing. There was no purpose in interfering with that machinery.

*Formula One,* 777 F.2d at 825 (Oakes, J., concurring) (quoting Tort Claims Against the United States: Hearings on S. 2690 Before a Subcomm. of the Senate Comm. on the Judiciary, 76th Cong., 3d Sess. 38 (1940)). Simply put, the legislative history of the Act is consistent with our reading of § 2680(c) and there is no basis for departing from the "plain meaning" of the statute.

We recognize that our holding creates a split among the circuits. The other appellate courts that have addressed this issue have found that the phrase "other law-enforcement officer" includes all types of officers, whatever their duties. However, those cases have not articulated a clear reason for this holding, and have often stated their conclusions with little or no analysis. *See, e.g., Halverson v. United States,* 972 F.2d 654 (5th Cir.1992), *cert. denied,* ––– U.S. –––, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); *Cheney v. United States,* 972 F.2d 247 (8th Cir.

1992); *Schlaebitz v. United States Dep't of Justice,* 924 F.2d 193 (11th Cir.1991); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir.1988); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481 (10th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *United States v. Lockheed L–188 Aircraft,* 656 F.2d 390 (9th Cir.1979). One of the cases most frequently cited by the other circuits is *Formula One.* In *Formula One,* the court began its analysis by noting that while "several circuits have ruled ... that [§] 2680(c) applies to detentions beyond the context of customs duties and taxes," this has been done "with scant discussion." 777 F.2d at 823. The court went on to hold that the actions in question fell within the scope of § 2680(c), but stated that it was reaching this holding "without determining whether the exemption would apply to searches by law enforcement officers with no relationship to the customs or excise functions." *Id.* at 823–24. The conduct in *Formula One* was "sufficiently akin to the functions carried out by Customs officials to place the [DEA] agents' conduct within the scope of [§] 2680(c)." *Id.* at 824. Therefore, contrary to the proposition for which it is often cited, *Formula One* does not hold that § 2680(c) should apply to the activities of all law enforcement officers regardless of whether there is a nexus between tax and customs activities. Given the lack of analysis by the other circuits, and what in our opinion is a misreading of *Formula One,* we do not feel obligated to join them in their interpretation of § 2680(c). Accordingly, we hold that § 2680(c) is limited to the detention of goods by law enforcement officers acting in a tax or customs capacity, and thus the district court erred in dismissing the FTCA claims brought by the Kurinskys.

### III.

The Kurinskys next argue that they should be able to seek damages directly against the United States, without regard to the limitations of the FTCA, for asserted Fifth Amendment due process violations. The federal government, however, is amenable to suit only insofar as it has consented to be sued. *See United States v. Mitchell,* 463

U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). Since the United States has not waived its sovereign immunity with respect to alleged violations of the Fifth Amendment, except as provided under the Tucker Act, 28 U.S.C. § 1346, the district court did not err in dismissing this claim. *See Nuclear Transp. & Storage, Inc. v. United States,* 890 F.2d 1348, 1351–53 (6th Cir. 1989), *cert. denied,* 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990).

■ Finally, the Kurinskys contend that the district court erred in applying a two-year statute of limitations to their *Bivens*[4] claims. In *McSurely v. Hutchison,* 823 F.2d 1002 (6th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988), this court held that *Bivens* actions should be governed by the same statute of limitations as § 1983 actions. Later, in a unanimous *en banc* decision, this court held that the two-year period provided in Ohio Revised Code § 2305.10 governs actions under 42 U.S.C. § 1983. *Browning v. Pendleton,* 869 F.2d 989, 990 (6th Cir.1989). Thus it follows, as this court recently observed in *Friedman v. Estate of Presser,* 929 F.2d 1151, 1158 (6th Cir.1991), the relevant Ohio statute of limitations for *Bivens* actions is two years.

The Kurinskys maintain that the four-year statute of limitations found in Ohio Revised Code § 2305.09[5] is more appropriate, and thus counts V and VI are saved. They argue that, since this court's decision in *Browning,* there have been at least two Ohio appellate court decisions that indicate a four-year period should be applied to § 1983 actions.[6] The Kurinskys concede that this court is not bound by the Ohio court decisions, but ask us

to revisit this issue in light of these cases. We note, however, that whatever merit there may be to the Kurinskys' argument only can be determined by this court sitting *en banc. See Salmi v. Secretary of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985) ("A panel of this Court cannot overrule the decision of another panel."). Accordingly, the Kurinskys' only recourse on this claim is by way of *en banc* consideration.

The Kurinskys also ask us to apply 28 U.S.C. § 1658, a federally-enacted statute of limitations, to their *Bivens* claims. Section 1658 provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

This provision was enacted on December 1, 1990. Because the Kurinskys' claims do not arise under "an Act of Congress enacted after the date of the enactment of this section," we find no merit to this argument. Therefore, the district court did not err in dismissing counts V and VI of the Kurinskys' complaint.

**REVERSED in part and AFFIRMED in part.**

---

4. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

5. Section 2305.09 provides, in relevant part:
   An action for any of the following causes shall be brought within four years after the cause thereof accrued:
       . . . .
   (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code.

6. The two Ohio cases cited by the Kurinskys are *Bojac Corp. v. Kutevac,* 64 Ohio App.3d 368, 581 N.E.2d 625 (1990), and *Weethee v. Boso,* 64 Ohio App.3d 532, 582 N.E.2d 19 (1989). In *Bojac,* the court observed:

   > It is clear that appellants' claim under Section 1983 does not fit into any of the categories of R.C. 2305.10 through 2305.12. It must, therefore, fall within the general or residual statute for personal injury actions, which is R.C. 2305.09(D).

   64 Ohio App.3d at 370, 581 N.E.2d 625.