UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY KNOWN AS 2916 FOREST GLEN COURT, BEAVERCREEK, OHIO, et al., Defendants.

No. C–3–99–230.

United States District Court, S.D. Ohio, Western Division.

Aug. 9, 2001.

---

Max Kravitz, Kravitz & Kravitz, Columbus, OH, for Defendants.

DECISION AND ENTRY OVERRULING MOTION FOR PRELIMINARY INJUNCTION (DOC. # 88) FILED BY CLAIMANT TWIN WHOLESALE, INC.; PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. # 90) SUSTAINED

RICE, Chief Judge.

This civil forfeiture action comes before the Court upon two Motions: (1) a Motion for a Preliminary Injunction (Doc. # 88) filed by Claimant Twin Wholesale, Inc. ("Twin" or "Claimant"); and (2) a Motion for Reconsideration of Order to Sell (Doc. # 90) filed by the Plaintiff. In its Motion for a Preliminary Injunction, Twin seeks an order requiring the Plaintiff to test and then to sell certain seized pharmaceuticals, if possible, with the proceeds held in escrow, pending resolution of this litigation. In its Motion for Reconsideration, the Plaintiff asks the Court to reconsider a prior Decision and Entry (Doc. # 85) ordering the sale of the pharmaceuticals in question. The Court heard oral argument on the two Motions on April 2, 2001.

I. *Factual Background*

The pending Motions are before the Court upon the following joint Stipulation of Facts (Doc. # 95):

1. On May 19, 1999, the U.S. Department of Justice—Drug Enforcement Administration ("DEA") seized approximately 784 cases of Pseudoephedrine and 74 cases of Ephedrine (collectively, the "pharmaceuticals") from the warehouse of Claimant Twin Wholesale, Inc. ("Claimant"). On the same date, the DEA seized certain other property of [several other] Claimants, including the residence of Ali and Mary Aladimi and a sum of U.S. currency.

2. On May 29, 1999, the Plaintiff filed the present action, a Complaint for Forfeiture in Rem, naming the residence of Claimant Ali Aladimi and Mary Aladimi as the defendant res. The pharmaceuticals were not named as defendants in this action. [Docket # 1].

3. On August 16, 1999, the DEA provided notice to Claimant of its intent to forfeit the pharmaceuticals. Claimant

timely filed a claim and cost bond with the DEA, thereby contesting the forfeiture and converting the administrative forfeiture into a judicial forfeiture of the pharmaceuticals.

4. On May 10, 2000, Claimant filed a Motion for Return of Seized Property, in the United States District Court for the Southern District of Ohio, Western Division, Case No. MC 3–00–017. [Docket # 1]. In its Motion, Claimant[ ] moved the Court to order the return of seized pharmaceuticals and other assets to Claimant[ ].

5. On July 10, 2000, Plaintiff filed a Motion to Amend the Complaint by adding the pharmaceuticals and other property as defendants in the present action and by modifying the relief requested [Docket # 51].

6. On August 29, 2000, the Court granted Plaintiff's Motion to Amend the Complaint and the pharmaceuticals were added as defendants in this action. [Docket # 64].

7. On November 7, 2000, Claimant moved the Court to order the sale of the pharmaceuticals and [to] place the sale[ ] proceeds into escrow pending the outcome of this forfeiture proceeding. [Docket # 77]. The essence of the Motion was that the pharmaceuticals, with a cost basis of approximately $170,000, were perishable and rapidly nearing their expiration date of March 2001, at which time they would become valueless. This Motion was brought after informal discussions and negotiations between counsel for Plaintiff and Claimant in regard to the sale of the pharmaceuticals failed.

8. On November 28, 2000, the Plaintiff filed its response, stating that it did not oppose the sale of the pharmaceuticals, subject to certain conditions. [Docket # 83].

9. On December 18, 2000, the Court sustained Claimant's motion seeking an order to sell the pharmaceuticals. [Docket # 85]. The Court's order was made subject to certain conditions: 1. the sale must be an arm's length transaction not involving friends, relatives or associates; 2. the buyer(s) must meet the regulatory criteria of the DEA and possess a valid certificate of registration; and 3. the sale proceeds must be deposited into the U.S. Marshal's Service Seized Asset Fund pending the resolution of the forfeiture case.

10. In anticipation of the Court's Order and at the request of Plaintiff, on December 12, 2000, Claimant's counsel faxed to Plaintiff a list of wholesale businesses that had expressed an interest in purchasing the pharmaceuticals. Each of the wholesalers possessed a valid certificate of registration and was lawfully qualified to purchase and sell the pharmaceuticals. Counsel for Claimant proposed that the sales transaction could be structured so that UPS could pick up the pharmaceuticals directly from the U.S. Marshal's storage facility, deliver them to a certified wholesaler on a COD basis (a routine service offered by UPS), and the proceeds could be delivered to the U.S. Marshal's office, pursuant to its instruction. Counsel's December 12, 2000, correspondence and accompanying list of wholesalers is attached as Exhibit "A" to Claimant's Motion for a Preliminary Injunction.

11. The list of wholesalers was forwarded by Plaintiff to the DEA for its approval. Plaintiff did not respond to counsel's December 12, 2000, [correspondence]; however, Plaintiff did inform Claimant's counsel that the U.S. Marshal's office was now objecting to the sale because of the nearing expiration date of the pharmaceuticals. *See*

Correspondence from Claimant's counsel to Plaintiff's counsel, dated January 18, 2001, attached as Exhibit B to Claimant's Motion for a Preliminary Injunction.

12. During this time frame, Claimant's counsel was communicating with Concord Laboratories, Inc., of Fairfield, New Jersey. Concord is the laboratory that manufactured, packaged and sold the pharmaceuticals to Claimant. Concord informed Claimant's counsel that it was possible and lawful to extend the expiration date of the pharmaceuticals from two years to three years if, after proper testing and analysis, it was determined that the pharmaceuticals met the necessary specifications. If the expiration date can be extended, Concord could re-package the pharmaceuticals with the new expiration date. Concord's DEA Registration No. is 001419CRW; its FDA Registration No. is 001419CRW. See correspondence from Concord Laboratories to Twin Wholesale, dated January 17, 2001, and correspondence from Concord Laboratories to Janet Kravitz, dated February 5, 2001, which sets forth its capability to test the pharmaceuticals, attached as Exhibit C to Claimant's Motion for a Preliminary Injunction.

13. It is lawful to extend an expiration date of a listed chemical such as Pseudoephedrine HCI, subject to the provisions of the Current Good Manufacturing Practice regulations contained in Title 21 of the Code of Federal Regulations, specifically, §§ 211.37 and 211.166.

14. On January 18, 2001, counsel for Claimants wrote a letter to Plaintiff's counsel, enclosing a copy of Concord's January 17, 2001, letter and requested that [the] pharmaceuticals be shipped to Concord Labs for testing. Claimant's counsel stressed the importance of acting expeditiously. See Exhibit B to Claimant's Motion for a Preliminary Injunction.

15. After Plaintiff's counsel reviewed the correspondence of counsel and Concord Labs, he informed Claimant's counsel that he would need to consult with the DEA and the U.S. Marshal's office regarding the matter. Claimant's counsel was subsequently informed that the U.S. Marshal's office had sought the involvement of the U.S. Health and Human Resources—Food and Drug Administration ("FDA") and that a meeting between the U.S. Attorney's office, DEA, FDA and Marshal's office was scheduled for January 31, 2001, to discuss Claimant's proposal that the pharmaceuticals be shipped to Concord Laboratories to be tested and analyzed in order to determine whether the expiration date could be extended.

16. On February 1, 2001, Plaintiff's counsel informed Claimant's counsel that the government now opposed the testing and analysis of the pharmaceuticals and any subsequent sale of the pharmaceuticals and that it intended to move the Court to reconsider its prior Order authorizing the sale of the pharmaceuticals. The arguments in support of the Plaintiff's opposition are set forth in the Declarations attached to [Plaintiff's] Response to Claimant's Motion for a Preliminary Injunction as Attachments 1–4.

II. *Analysis of Claimant's Motion for Preliminary Injunction (Doc. # 88)*

■ As noted, *supra*, Twin seeks a preliminary injunction order directing the Plaintiff to test and then to sell (if possible) the pharmaceuticals that were seized by the DEA, with the proceeds held in escrow, pending resolution of this litigation. This Court considers four factors

when deciding whether to grant a preliminary injunction. Those factors are: (1) the likelihood that the party seeking relief will succeed on the merits of the claim; (2) whether the party seeking relief will suffer irreparable harm without a preliminary injunction; (3) the probability that granting the requested relief will cause substantial harm to others [1]; and (4) whether the public interest is advanced by the issuance of a preliminary injunction. *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994). These four considerations are factors to be balanced, rather than prerequisites that must be met. *Id.* With these standards in mind, the Court turns now to its analysis of Twin's pending Motion.

### A. *Likelihood of Success on Merits*

■ Twin advances the following brief argument with respect to its likelihood of success on the merits of this action:

> Claimant has every expectation that Claimants will prevail in this forfeiture action. The Claimants are guilty of no wrongful behavior and no criminal proceedings have been filed against them. Claimant conducts a legitimate business and at no time did it possess or distribute a listed chemical knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture a controlled substance. *See* Claim-

ants' Answer to Amended Complaint [Docket # 71], and 21 U.S.C. § 841(d)(2). Reconsideration of Claimants' Motion to Suppress/Motion to Dismiss is currently pending before the Court which sets forth the circumstances surrounding the unlawful search and seizure of the defendant res.[2]

(Doc. # 88 at 9–10) (footnote omitted).[3]

After reviewing the foregoing argument, the Court concludes that Twin has failed to demonstrate any likelihood of success on the merits. Twin's denial of wrongdoing and its filing of a Motion for Reconsideration do nothing to establish a likelihood of success in this litigation. Nor does the absence of any criminal charges establish a likelihood of success, given that such charges are not a prerequisite to the Plaintiff pursuing a civil forfeiture action.

■ In response to Twin's denial of wrongdoing, the Plaintiff has provided the Court with evidentiary materials which suggest that, if anything, it is likely to prevail on the merits of this action. *See* Uncapher Declaration, attached to Doc. # 89 at Exh. 1; Garcia Affidavit, *Id.* at Exh. 4. In any event, the party seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits, *Musto v. American General Corpo-*

---

1. Although the Sixth Circuit defines this branch of the four-part test in terms of harm to others, the focus is on the harm that a defendant will suffer if the requested injunctive relief is granted. It is with this factor that courts have traditionally balanced the equities (i.e., the harm that the plaintiff will suffer in the absence of an injunction is balanced against that which will befall the defendant if same is granted). *See Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695 (6th Cir.1977).

2. The record reflects that on June 12, 2000, the Claimant filed a Motion to Suppress Search and Seizure (Doc. # 48), directed to-

ward the Plaintiff's seizure of the property at issue. Magistrate Judge Michael Merz overruled the Motion to Suppress on August 29, 2000. (Doc. # 64). A Motion for Reconsideration of the Magistrate Judge's ruling remains pending in this action. (Doc. # 79).

3. After setting forth its brief argument on the "likelihood of success" issue, Twin directs the Court's attention elsewhere, reasoning that "the issue of whether or not Claimant prevails in the forfeiture case is, for all practical purposes, subordinate to the issue of the necessity of preserving the res for whomever prevails in this action." (Doc. # 88 at 10).

*ration,* 861 F.2d 897, 900 (6th Cir.1988), and Twin has made no such showing. As a result, this factor militates strongly against the issuance of a preliminary injunction. Indeed, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief. *Gonzales v. National Board of Medical Examiners,* 225 F.3d 620, 625 (6th Cir.2000), *petition for cert. filed* March 21, 2001.

## B. *Existence of Irreparable Harm*

■ With respect to the issue of irreparable harm, Twin contends that the seized pharmaceuticals bear expiration dates of February and March, 2001. Although these dates have passed, Twin has presented evidence suggesting that it is possible to extend the expiration date by one year, if the pharmaceuticals are analyzed and are found to meet certain requirements. (Doc. # 88 at Exh. C). Given that the seized pharmaceuticals have passed their current expiration dates, they are now worthless and cannot be sold without those dates being extended. As a result, Twin argues that it will suffer irreparable harm, unless the Court enters a preliminary injunction and directs the Plaintiff to have the seized pharmaceuticals tested and then sold, if they are found to meet the requirements for extending the expiration date, with the proceeds held in escrow, pending the resolution of this litigation.

In response, the Plaintiff argues that no irreparable harm exists, even if its conduct has rendered the seized pharmaceuticals worthless. If Twin prevails in this forfeiture action, the Plaintiff insists that it (Twin) may bring a civil action against the United States for money damages, because the federal government has waived sovereign immunity with respect to such a claim. (Doc. # 89 at 3). In reply, Twin

acknowledges the availability of a future action against the United States under the Federal Tort Claims Act ("FTCA"). Twin argues only that "such an action is a long and expensive process." (Doc. # 93 at 3).

Upon review, the Court concludes that Twin has failed to demonstrate the existence of irreparable harm. As noted above, Twin does not dispute the availability of an action for damages under the FTCA. Despite the fact that such a process might be "long and expensive," an action under the FTCA remains an adequate remedy, if Twin prevails in the present forfeiture action. Although neither party has briefed the FTCA issue in any detail, that legislation "provides generally that the United States shall be liable, to the same extent as a private party, 'for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Kurinsky v. United States,* 33 F.3d 594, 596 (6th Cir.1994). The FTCA applies in circumstances where the United States, if a private person, would be liable under the law of the state where the act or omission at issue took place. *See* 28 U.S.C. § 1346(b).

■ In the present case, it appears that Twin's claim against the United States likely would be one for conversion, which has been found to be actionable under the FTCA. *CHoPP Computer Corp. v. United States,* 5 F.3d 1344, 1347 (9th Cir.1993); *Rodriguez–Rodriguez v. United States,* 2001 WL 123924 (10th Cir. Feb. 14, 2001), *petition for cert. filed* April 16, 2001. Although the FTCA excepts from its waiver of immunity "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer," the Sixth Circuit has

held that this exception only applies to property losses involving customs or tax agents, or other law enforcement officers acting to enforce customs or tax laws. *Kurinsky*, 33 F.3d at 596 598 (discussing 28 U.S.C. § 2680(c)). Given that the present case does not involve the detention of property for customs or tax-related purposes, the exception to the waiver of sovereign immunity set forth in 28 U.S.C. § 2680(c) would not bar an FTCA action by Twin based on the Plaintiff's seizure of its pharmaceuticals.[4] *Id.* As a result, Twin's failure to demonstrate irreparable harm militates against the Court's issuance of a preliminary injunction.

### C. *Balancing of Equities*

With respect to this factor, Twin makes the following one-sentence argument: "Claimant cannot conceive of any instance where harm to others would take place as a result of the injunctive action requested." (Doc. # 88 at 15). As noted above, however, this factor actually requires the Court to balance the harm that Twin will suffer in the absence of an injunction against the harm that will befall the Plaintiff if injunctive relief is granted.

Upon review, it appears to the Court that Twin faces some potential harm if injunctive relief is denied. Absent the requested injunctive relief (which includes testing, repackaging and reselling the pharmaceuticals, if possible, at the Plaintiff's expense), Twin will be unable to sell its now-expired pharmaceuticals, even if it prevails in this action, and it will be forced to pursue a claim under the FTCA. On the other hand, if the Court grants the injunctive relief requested by Twin, the Plaintiff will be required to incur a significant expense to test the seized pharmaceuticals and to ensure their safety for re-sale. Of course, if the pharmaceuticals were tested, repackaged and sold, the Plaintiff presumably would benefit by receiving any escrowed sale proceeds, if it prevails in this litigation. As a result, the Court concludes that this factor militates in favor of Twin.[5]

---

**4.** Even if 28 U.S.C. § 2680 were applicable in the present case, Congress recently amended that provision and created an exception to the exception set forth therein. As amended by the Civil Asset Forfeiture Reform Act of 2000, 28 U.S.C. § 2680 now *expressly allows* FTCA claims based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—

(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

(2) the interest of the claimant was not forfeited;

(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

The Sixth Circuit has held that the Civil Asset Forfeiture Reform Act of 2000 applies to actions such as the present case, which were pending at the time of its enactment. *United States v. Real Property*, 241 F.3d 796 (6th Cir.2001).

**5.** In its Memorandum, the Plaintiff speculates that if the seized pharmaceuticals are sold, they "may fall into the hands of the operators of the methamphetamine labs and cause additional harm to the public." (Doc. # 89 at 3). Although the Plaintiff raises a legitimate concern, the Court notes that the seized pharmaceuticals are not illegal substances. They may be purchased over-the-counter in stores across the country. While it is possible that the seized pharmaceuticals might find their way to a clandestine methamphetamine lab, where they could be converted into an illegal substance, the Court presumably could minimize that possibility by ordering them to be sold to a DEA-registered and approved retailer or wholesaler.

#### D. *Public Interest*

With respect to this factor, Twin reasons that injunctive relief is in the public interest, because "whoever prevails in this action will benefit from the interlocutory sale of the pharmaceuticals." (Doc. # 88 at 15). In response, the Plaintiff insists that Twin has not identified any public interest to support injunctive relief. (Doc. # 89 at 3).

Upon review, the Court is unpersuaded by Twin's argument that the *public* interest is necessarily advanced by the prevailing party in this litigation receiving the proceeds from a sale of the seized pharmaceuticals. In addition, given that the pharmaceuticals have passed their expiration date, they cannot be sold, unless they are tested, approved and repackaged. As part of its requested injunctive relief, Twin asks the Court to direct the Plaintiff to pay for such testing and repackaging. (Doc. # 88 at 16–17). Given Twin's failure to demonstrate a likelihood of success on the merits, however, it is not in the public interest to require the Plaintiff to incur significant expenses to test the seized pharmaceuticals, which might fail to meet the requirements for resale when tested.

#### E. *Conclusion Regarding Injunctive Relief*

After balancing each of the foregoing factors, the Court concludes that Twin has not demonstrated its entitlement to the requested injunctive relief. In reaching this conclusion, the Court finds particularly significant Twin's failure to establish a likelihood of success on the merits. The Court also notes Twin's failure to demonstrate irreparable harm. Absent either of these showings, the Court declines to issue a Preliminary Injunction ordering the Plaintiff to test and then to sell the

seized pharmaceuticals, if possible. Accordingly, Twin's Motion for a Preliminary Injunction (Doc. # 88) will be overruled.

#### III. *Analysis of Plaintiff's Motion for Reconsideration (Doc. # 90)*

In its Motion for Reconsideration (Doc. # 90), the Plaintiff asks the Court to reconsider a December 18, 2000, Decision and Entry (Doc. # 85), in which it ordered the sale of the seized pharmaceuticals. In that prior ruling, the Court sustained Twin's Motion for an Order to Sell the Defendant Pseudoephedrine and Ephedrine (Doc. # 77). In so doing, the Court noted that the Plaintiff had no objection to the sale, provided that certain conditions were imposed. (*Id.*).

After the Court ordered the sale of the seized pharmaceuticals, and imposed the conditions, the Plaintiff then filed the present Motion for Reconsideration. Therein, the Plaintiff argues that the Court should reconsider its December 18, 2000, Decision and Entry for the following reasons: (1) the United States is likely to prevail in this action; (2) the seized drugs may find their way into clandestine drug labs if resold; (3) the United States has never put seized pharmaceutical back "on the street"; (4) the seized pharmaceuticals have passed their expiration dates; (5) the United States has no interest in reselling the pharmaceuticals and should not be required to pay for them to be tested, repackaged and sold; and (6) Twin may file an FTCA action for any losses caused by the seizure, if it prevails in this action. (Doc. # 90 at 1–3). In response to the Plaintiff's Motion, Twin has filed a Memorandum incorporating, by reference, the arguments set forth in support of its Motion for a Preliminary Injunction.[6] (Doc. # 92).

---

**6.** In its Memorandum, Twin also "moves the Court for an order requiring Plaintiff to com-

Upon review, the Court will sustain the Plaintiff's Motion for Reconsideration (Doc. # 90). Without respect to the merits of each of the various arguments advanced by the Plaintiff, the Court notes that the seized pharmaceuticals *cannot* now be sold, as previously ordered. Although there appears to be some disagreement about the precise expiration date of the pharmaceuticals, Twin itself concedes that, as of March, 2001, they all had expired. (Doc. # 92 at 2). Given that the expiration date for the pharmaceuticals has passed, it is now unlawful for them to be sold, unless they are first tested and their expiration date is extended, if possible.[7] Consequently, the Court sustains the Plaintiff's Motion for Reconsideration (Doc. # 90) of the December 18, 2000, Decision and Entry (Doc. # 85), ordering the seized pharmaceuticals to be sold.

IV.  *Conclusion*

Based on the reasoning and citation of authority set forth above, the Motion for a Preliminary Injunction (Doc. # 88) filed by Claimant Twin Wholesale, Inc., is overruled. The Plaintiff's Motion for Reconsideration (Doc. # 90) is sustained.

The Court notes that the following Motions remain pending in this action: (1) Claimant's Motion to Compel Discovery (Doc. # 78); (2) Claimant's Motion for Reconsideration (Doc. # 79); and (3) Claimant's Motion for Attorney's Fees (Doc.

# 82). Finally, the merits of this civil forfeiture action, in which the Plaintiff seeks the forfeiture of Twin's pharmaceuticals and other property, remain to be litigated.

---

pensate Claimant Twin Wholesale for Claimant's loss as a result of the deterioration of the [seized pharmaceuticals], measured by Claimant's cost and reasonable profits, such [o]rder to take effect if and when Claimant prevails in this action against the [seized pharmaceuticals]." (Doc. # 92 at 2). Through this "Motion," Twin appears to be attempting to circumvent the FTCA process by asking the Court to order the Plaintiff to compensate it for any loss resulting from the seizure of the pharmaceuticals. Notably, however, Twin cites no authority in support of its request,

which has been made in a Memorandum opposing the Plaintiff's Motion for Reconsideration. If Twin desires an order directing the Plaintiff to compensate it for any losses, it may request such relief through a separately filed Motion with supporting authority.

7.  In its analysis of Twin's Motion for a Preliminary Injunction, *supra,* the Court has declined to order the Plaintiff to pay for testing and repackaging of the seized pharmaceuticals in order for them to be sold.