In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2725

ROBERT S. ORTLOFF,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
ROBERT BARRIX, THOMAS JOHNSON, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 C 0829—**Barbara B. Crabb**, *Chief Judge.*

ARGUED FEBRUARY 13, 2003—DECIDED JULY 11, 2003

Before COFFEY, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Robert S. Ortloff, a federal pris-
oner, sued the United States and several prison officials
under the Federal Tort Claims Act, 28 U.S.C. § 2680, seek-
ing damages for the prison officials' alleged destruction
of his personal property. Because some of the property
allegedly destroyed included materials related to several of
Ortloff's pending lawsuits, he also alleged an access-to-
courts claim. The district court dismissed Ortloff's access-to-
courts claim and, following a bench trial, ruled in favor of
the defendants on the merits of Ortloff's FTCA claim. Ortloff
appeals. We affirm.

I.

During 1999, Robert Ortloff was serving a prison sentence in the Federal Correctional Institute Oxford, in Oxford, Wisconsin. On July 13 of that year, Officer Robert Barrix, a prison guard at Oxford, searched Ortloff's cell and discovered 25 books of stamps, which exceeded the number allowed under prison rules. After making this find, Officer Barrix secured Ortloff's cell and reported the contraband to the operations lieutenant, who directed Officer Barrix to immediately transfer Ortloff to the Special Housing Unit ("SHU"). Ortloff was placed into administrative detention in the SHU at 8:20 that evening.

After Ortloff's transfer, Officer Barrix began inventorying Ortloff's property. He did this by placing Ortloff's personal property into cardboard boxes for transfer to the SHU and by completing an "Inmate Personal Property Form" for each box of materials. In packing the materials, Officer Barrix removed items he believed were government property, such as file folders and binders. He also removed paper clips and binder clips. By the end of his shift, Officer Barrix had inventoried and packed four boxes of Ortloff's property. Officer Thomas Johnson then picked up where Officer Barrix left off, completing the inventorying in a similar fashion. After the materials were boxed, prison officials transferred a total of thirteen boxes to the SHU.

Three days later, on July 16, 1999, Ortloff was released from the SHU. The property officer on duty at that time brought Ortloff ten boxes of non-contraband materials. The parties dispute what happened at this point: the government maintains that Ortloff declined to inventory his property, whereas Ortloff states that the property officer refused to allow him to review the materials. In any event, Ortloff noted on the property form that he had not

reviewed the boxes and that prison officials had retained two boxes. Prison officials claim that those two boxes contained contraband and were mailed outside of the prison. However, they did return one additional box to Ortloff after he was released from the SHU.

Ortloff later filed suit against the United States and several prison officials, claiming that the defendants mishandled, damaged, and destroyed his personal property, including lawsuit-related documents relating to several pending habeas and civil rights actions he had filed. In his complaint, he alleged the following claims: the denial of his right of access-to-courts; intentional infliction of emotional distress; a tort claim for the damage or destruction of personal property; several miscellaneous constitutional claims; and a claim based on the defendants' alleged failure to follow administrative regulations. The district court dismissed Ortloff's access-to-courts claim because he had failed to allege any specific or identifiable harm to his pending lawsuits. As to Ortloff's claim for damage to his personal property, the district court concluded that Ortloff had stated a claim under the FTCA, but that the United States was the only proper defendant. Accordingly, it substituted the United States on this claim and dismissed the claim against the individual defendants. The district court then declined to exercise supplemental jurisdiction over Ortloff's state law intentional infliction of emotional distress claim, and also dismissed his administrative claim and other miscellaneous constitutional claims. After the district court dismissed Ortloff's access-to-courts claim, Ortloff filed a proposed amended complaint which the district court construed as a motion to reconsider its decision denying Ortloff leave to proceed *in forma pauperis* on his access-to-courts claim. The district court then reaffirmed its order dismissing Ortloff's access-to-courts claim.

This left only the FTCA claim against the United States. The United States moved to dismiss that claim for lack of jurisdiction, arguing that it had not waived sovereign immunity for a damage claim based on the destruction of goods by a prison official. The district court denied that motion, concluding that Ortloff could state a claim under the FTCA. The district court then held a bench trial on Ortloff's FTCA claim. Following trial, the district court directed a verdict in favor of the United States under Fed. R. Civ. P. 50. Ortloff appeals.

## II.

On appeal, Ortloff challenges only two aspects of the district court's rulings. First, he argues that the district court erred in dismissing his access-to-courts claim. Second, he challenges the district court's ruling on the merits of his FTCA claim. We consider each argument in turn.

### A.  Access to Courts

Ortloff first challenges the district court's dismissal of his access-to-courts claim. The district court dismissed this claim under Rule 12(b)(6) because Ortloff did not allege any specific prejudice caused by the alleged destruction of his legal papers. We review the district court's ruling *de novo. Del Raine v. Williford,* 32 F.3d 1024, 1042 (7th Cir. 1994).

Ortloff claims that the district court erred in dismissing his access-to-courts claim because he alleged that the defendants' confiscation, seizure and destruction of his legal materials severely prejudiced and adversely affected his ability to prosecute at least three pending lawsuits. This, Ortloff contends, is sufficient under the federal notice-pleading standards of Rule 8(a).

Although Ortloff is correct that Rule 8(a) merely requires a short, plain statement of the facts sufficient to put the defendants on notice of the claim, the facts alleged must nonetheless be sufficient to support a right to access-to-courts claim. As this court explained in *Martin v. Davies*, 917 F.2d 336 (7th Cir. 1990), to state a right to access-to-courts claim and avoid dismissal under Rule 12(b)(6), a prisoner must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct. *Id.* at 340. This is because a right to access-to-courts claim exists only if a prisoner is unreasonably prevented from presenting legitimate grievances to a court; various resources, documents, and supplies merely provide the instruments for reasonable access, and are not protected in and of themselves. *Id.* Thus, when a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filings, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources.[1] *Id.* at 341. Ortloff's general allegations of prejudice are insufficient under the precedent of this circuit. Accordingly, the district court properly dismissed Ortloff's right to access-to-courts claim.

---

[1] While a divided panel of this court in *DeMallory v. Cullen*, 855 F.2d 442, 449 (7th Cir. 1988), held that where a prisoner alleges "a substantial and continuous limit on . . . access to legal materials or counsel, . . . the complaint carries an inherent allegation of prejudice," Ortloff did not allege such substantial and continuous limitations. Therefore, the general rule of this circuit, requiring the allegation of specific prejudice, controls. *See Martin*, 917 F.2d at 340-41.

*B.  FTCA Claim*

In addition to his right to access-to-courts claim, Ortloff's complaint also presented a claim for the alleged destruction of his property under the FTCA. The government moved to dismiss this claim for lack of subject matter jurisdiction, arguing that it had sovereign immunity from suit and had not waived its immunity under the FTCA for claims such as the one Ortloff was pursuing. The district court rejected this argument, holding that it had jurisdiction under the FTCA to consider Ortloff's claim for damages stemming from the alleged destruction of his property. However, following a bench trial, the district court entered judgment in the government's favor on the merits, concluding that Ortloff failed to establish that the government had damaged or destroyed any of his property. Ortloff appeals from this judgment.

On appeal, the government first reasserts its claim of sovereign immunity from suit. The question of sovereign immunity concerns the subject matter jurisdiction of federal courts. *LaBonte v. United States*, 233 F.3d 1049, 1051 (7th Cir. 2000) ("The United States government may be sued only where Congress has waived its sovereign immunity and the existence of such waiver is a 'prerequisite for jurisdiction.'"). *But see Clark v. United States*, 326 F.3d 911, 913 (7th Cir. 2003) (questioning whether statutory exceptions to liability under the FTCA concern a court's subject matter jurisdiction or the merits of the case). Therefore, before considering the merits of Ortloff's FTCA claim on appeal, we must first determine whether the district court properly exercised subject matter jurisdiction over Ortloff's claim.

"It is axiomatic that the United States as sovereign cannot be sued without its consent." *Macklin v. United States*, 300 F.3d 814, 820 (7th Cir. 2002). Thus, "the United States

government may be sued only where Congress has waived its sovereign immunity . . . ." *LaBonte*, 233 F.3d at 1051. Congress has waived its immunity, in part, by enacting the FTCA in 1946. The FTCA "provides generally that the United States shall be liable, to the same extent as a private party, 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.' " *Kosak v. United States*, 465 U.S. 848, 851-52 (1984) (quoting 28 U.S.C. § 1345(b)). This broad waiver of immunity, however, is subject to multiple exceptions. *See* 28 U.S.C. § 2680(a)-(n).

In this case, the government relies on the exception to its waiver of immunity contained in § 2680(c). Section 2680(c) provides that the government's waiver of immunity "shall not apply to . . . [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officers." 28 U.S.C. § 2680(c).[2] The government maintains that because Ortloff's claim "arise[s] in respect of the detention of any goods," namely his personal papers, "by any other law enforcement officers," to wit, the prison guards, the exception of § 2680(c) applies and therefore the government has not waived its sovereign immunity.[3]

---

[2] Congress amended Section 2680(c) on April 25, 2000. 28 U.S.C. § 2680(c). However, because Ortloff's alleged claim arose prior to this amendment and because the government does not argue that this revision applies retroactively, we apply the statute in effect at the time of the alleged injury.

[3] At oral argument we asked whether this was the position of the local United States Attorney or the Attorney General,
(continued...)

Conversely, Ortloff contends that the "any other law enforcement officers" language of that section only applies when the "other law enforcement officers" are performing or assisting in customs or excise functions. Because the prison guards were not acting in those capacities, Ortloff asserts that § 2680(c) is inapplicable.

"The Supreme Court has noted the ambiguity as to the reach of the phrase 'any other law enforcement officer,' but has not determined whether the section 2680(c) exemption is limited to the customs or excise context." *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 823 (2d Cir. 1985) (citing *Kosak v. United States*, 465 U.S. 848, 852 n.6 (1984)).[4] We also have not yet resolved this issue.[5] Several other circuits, however, have addressed that issue, al-

---

[3] (...continued)
and were informed that this position comes from Washington and the Attorney General's office.

[4] In *Kosak*, in addition to noting this ambiguity, the Supreme Court explained that in interpreting the meaning of "any other law enforcement officer," the principle that "sovereign immunity is the rule, and that legislative departures from the rule should be strictly construed" is unhelpful when trying to determine the scope of § 2680(c)'s exception. *Kosak*, 465 U.S. at 854 n.9.

[5] In *United States v. 1500 Cases, More or Less*, 249 F.2d 382 (7th Cir. 1957), this court quoted §2680(c)'s exception, but did not discuss the meaning of the "any other law enforcement officer" language. Rather, in that case, we first noted that the plaintiff had not presented an FTCA claim before the district court, and then stated that even if they had, since the plaintiff never filed a complaint seeking damages from the United States before filing suit, it could not maintain an action under the FTCA. The reference to § 2680(c) was in passing, and not dispositive of the case.

though there is a split in the circuits as to the scope of § 2680(c). The Fifth, Eight, Ninth, Tenth, Eleventh and Federal Circuits have concluded that section 2680(c)'s "other law enforcement officer" exemption applies to all law enforcement officers, and not merely those performing customs or excise functions. *See United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1490-91 (10th Cir. 1984) (USDA agents included); *Halverson v. United States*, 972 F.2d 654, 655-56 (5th Cir. 1992) (border patrol agents included); *Schlaebitz v. United States Dep't of Justice*, 924 F.2d 193, 194 (11th Cir. 1991) (federal marshals included); *Ysasi v. Rivkind*, 856 F.2d 1520, 1525 (Fed. Cir. 1988) (border patrol agents included); *United States v. Lockheed L-188 Aircraft*, 656 F.2d 390, 397 (9th Cir. 1979) (FAA employees included); *Cheney v. United States,* 972 F.2d 247, 248 (8th Cir. 1992) (drug task force agent protected). Conversely, the Sixth Circuit and the D.C. Circuit have held that the "any other law enforcement officer" exception is limited to officers performing customs and excise functions. *Bazuaye v. United States*, 83 F.3d 482, 486 (D.C. Cir. 1996) (noting that § 2680(c) is limited to detention of goods by law enforcement officers acting in tax or customs capacities); *Kurinsky v. United States*, 33 F.3d 594, 598 (6th Cir. 1994) (accord).[6] For the following reasons, today we join the

---

[6] Some circuits have cited the Second Circuit's decision in *Formula One Motors, Ltd. v. United States*, 777 F.2d 822 (2d Cir. 1985), for the proposition that the "any other law enforcement officer" language applies broadly to all law enforcement officers. *See, e.g., United States v. Bein*, 214 F.3d 408, 415 (3d Cir. 2000); *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992). Conversely, the D.C. Circuit in *Bazuaye v. United States*, 83 F.3d 482, 484 (D.C. Cir. 1996), cited the *Formula One* decision for the proposition that the Second Circuit suggested that they

(continued...)

Sixth Circuit and D.C. Circuit and hold that the exception found in § 2680(c) applies only to law enforcement officers performing functions related to customs and excise duties.

First, as the Supreme Court has explained, "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984). Thus, we cannot parse the "any other law enforcement officer" language from the remainder of § 2680(c), but rather that language must be read as part of the totality of § 2680(c). In its entirety, as excerpted above, § 2680(c) provides that the government's waiver of immunity shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officers." 28 U.S.C. § 2680(c). In context, then, the "any other law enforcement officer" language conveys a drastically different meaning than in isolation, as the principles of *ejusdem generis* and *noscitur a sociis* demonstrate. First, the principle of *ejusdem generis*, or "[o]f the same kind, class, or nature," *Kurinsky*, 33 F.3d at 596 n.2 (quoting Black's Law Dictionary 464 (5th ed. 1979)), instructs "that where general words follow an enumera-

---

[6] (...continued)
would limit the exception to law enforcement officers performing customs and excise functions. However, neither view is correct, as the Second Circuit in *Formula One* expressly noted that it was not reaching the issue because the DEA agents who seized the automobile and its contents were acting sufficiently like the function of customs agents to fall within the scope of the exception of section 2680(c). *Formula One*, 777 F.2d at 823-24.

tion of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Kurinsky*, 33 F.3d at 597 n.2 (quoting Black's Law Dictionary 464 (5th ed. 1979)). Under the principle of *noscitur a sociis*, or "[i]t is known from its associates," "the meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it." *Id.* at 597 n.3. These two principles of interpretation demonstrate that the "any other law enforcement officer" language must be read in light of § 2680(c)'s specific reference to claims arising out of the "collection of any tax or customs duty," and the class of officers identified, namely "any officer of customs or excise." Read in this light, the "any other law enforcement officer" language thus means any other law enforcement officers performing functions related to customs or excise. *Kurinsky*, 33 F.3d at 596-97; *Bazuaye*, 83 F.3d at 483-84.

Moreover, as the D.C. Circuit explained in *Bazuaye*, limiting § 2680(c)'s exception to officers performing customs or excise functions is consistent with the rationale underlying this exception. Specifically, "Congress carved out the various § 2680 exceptions, at least in part, in order to preclude tort suits against the government when other 'adequate remedies' were already available.' " *Bazuaye*, 83 F.3d at 484-85 (quoting *Kosak*, 465 U.S. at 858). In the case of "[c]laims against federal officers carrying out the customs and tax laws [those claims] were among those for which adequate remedies were already available." *Bazuaye*, 83 F.3d at 485. However, "[t]he same [can] not be said for plaintiffs injured by federal law enforcement officers acting outside the authority of the customs and tax law." *Id.*

at 485. Thus, the rationale underlying § 2680(c)'s exception in the context of customs and excise functions does not justify a reading which would extend the coverage of the exception to all other law enforcement officers. In fact, such a broad reading of § 2860(c)'s exception would swallow up Congress' waiver of immunity, given the potential number of federal law enforcement officials in our modern government's alphabet soup—i.e., the DEA, EPA, FBI, FDA, FTC, INS, OSHA, SEC, or USDA, to name a few.

Moreover, reading the exception so broadly that it includes all other law enforcement officers would render superfluous the "any officer of customs or excise" language, since such officers would clearly be covered by the broad "any other law enforcement officer" language. *Bazuaye*, 83 F.3d at 484. In interpreting statutes, courts "should disfavor interpretations of statutes that render language superfluous . . . ." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). This added reason supports our conclusion that the § 2680(c) exception only applies to law enforcement officers performing custom or excise functions.

In response, the government points to the cases from the majority of other circuits, all of which held that the § 2680(c) exception applies to all law enforcement officers and not merely those performing customs or excise functions. While the quantity of circuits favors the government's position, the quality of decisions favors Ortloff's view: The circuits that have held that § 2680(c) applies to all other law enforcement officers have failed to consider the "any other law enforcement officer" language in context or in light of the principles of *ejusdem generis* and *noscitur a sociis.* In fact, as *Kurinsky* recognized, those other circuits merely conclusorily stated that § 2680(c) applies to all law enforcement officers, without any analysis. *See Kurinsky*, 33 F.3d at 598 (noting that "other appellate

courts that have addressed this issue have found that the phrase 'other law enforcement officer' includes all types of officers, whatever their duties, [but noting] . . . those cases have not articulated a clear reason for this holding, and have often stated their conclusions with little or no analysis"). Conversely, the D.C. and Sixth Circuits in *Bazuaye v. United States*, 83 F.3d 482 (D.C. Cir. 1996), and *Kurinsky v. United States*, 33 F.3d 594, 598 (6th Cir. 1994), held that § 2680(c)'s exception applies solely to law enforcement officers performing customs or excise functions only after conducting an in-depth analysis of the issue.[7] We find *Kurinsky* and *Bazuaye*'s analyses more persuasive and adopt them today.

That, however, merely means that we have jurisdiction over Ortloff's FTCA claim. After exercising jurisdiction the district court held a bench trial on his FTCA claim, at the conclusion of which the court found that Ortloff failed to present evidence to establish that any of his documents were damaged or destroyed. Based on this finding, the district court granted the United States a directed verdict under Rule 50. Ortloff appeals from this judgment, arguing first that Rule 50 is inapplicable to a bench trial, and that in any event the district court erred by failing to make specific factual findings and in ruling in the government's favor on his FTCA claim.

The government acknowledges Ortloff's initial point: a directed verdict pursuant to Rule 50(a) is appropriate

---

[7] Because we conclude that § 2680(c) applies solely to law enforcement officers acting in the customs or excise capacity, we need not address Ortloff's other contention that his legal documents are not "goods" or "merchandise" within the meaning of § 2680(c).

only in a jury trial.[8] In a bench trial, the appropriate procedural mechanism for dismissal is Rule 52(c).[9]

However, to the extent the district court relied on the wrong procedural mechanism, that actually favored Ortloff, because Rule 50(a) requires the court to consider the evidence in the light most favorable to the plaintiff, *Payne v. Milwaukee County*, 146 F.3d 430, 432 (7th Cir. 1998), whereas Rule 52(c) allows the district court to weigh the evidence to determine whether the plaintiff has proven his case. *Collins v. Ralston Purina Co.*, 147 F.3d 592, 599 (7th Cir. 1998). Thus, Ortloff was not prejudiced by the district court's procedural misstep.

Ortloff disagrees, arguing that because the district court entered judgment pursuant to Rule 50(a)(1), the district court failed to comply with Rule 52(c)'s requirement that "[s]uch a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of

---

[8] Rule 50(a)(1) provides: "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

[9] Rule 52(c) provides: "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence."

this rule." Subdivision (a) in turn requires: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ." Fed. R. Civ. P. 52(a). However, Rule 52(a) allows for such findings to be made orally, stating: "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court." Moreover, as we explained in *Denofre v. Transportation Insurance Rating Bureau*, 532 F.2d 43, 45 (7th Cir. 1976), Rule 52(a) merely "necessitates that the findings of fact on the merits include as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." In this case, the district court's oral ruling satisfied that requirement. Specifically, in ruling against Ortloff, the district court explained its reasoning in open court, stating in essence that the evidence presented was insufficient to establish that the prison officials had, in fact, destroyed or damaged any of Ortloff's property. *See* July 11, 2001, Transcript at 35-36 ("[T]here is no indication . . . that you lost anything . . . I don't know what is missing. I don't know whether anything that is missing is of any value to you whatsoever in any way that would allow me to find that you really had a loss.") Accordingly, the district court's improper reliance on Rule 50(a) is irrelevant, and we therefore affirm the judgment in favor of the United States.[10] *See, e.g., Rothner v. City of Chicago*, 929 F.2d 297, 303 n.9 (7th Cir. 1991) (we may affirm on any basis in the record).

---

[10] Ortloff does not maintain on appeal that the district court's finding that the government did not destroy or damage his property was clearly erroneous.

## III.

The district court properly dismissed Ortloff's right to access-to-courts claim because he failed to allege any specific prejudice to his pending litigation. The district court also properly exercised jurisdiction over Ortloff's FTCA claim because § 2680(c) only excepts law enforcement officers performing customs or excise functions, and the prison guards in this case were not acting in those capacities. But, on the merits, Ortloff's FTCA claim fails because he failed to satisfy his burden of proving that the prison officials damaged or destroyed any of his property. For these and the foregoing reasons, we AFFIRM.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*