Jeff **MUSGROVE**, Plaintiff–Appellant,

v.

George E. **DETELLA**, et al.,
Defendants–Appellees.

No. 01–3758.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 20, 2003.*

Decided Aug. 21, 2003.

Rehearing Denied Sept. 26, 2003.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Jeff Musgrove, Pro Se, Menard Correctional Center, Menard, IL, for Plaintiff–Appellant.

Richard S. Huszagh, Office of the Attorney General, Chicago, IL, for Defendants–Appellees.

Before BAUER, KANNE, and EVANS, Circuit Judges.

### ORDER

Jeff Musgrove filed this suit under 42 U.S.C. § 1983, alleging as relevant here that three employees of the Illinois Department of Corrections deprived him of his constitutionally guaranteed right of access to the courts by intentionally confiscating his legal documents when he was moved to a different prison. The parties proceeded to trial, but after Musgrove presented his case the district court granted defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Musgrove appeals, and we affirm.

We note at the outset that when we review a grant of judgment as a matter of law, we view the evidence in the light most favorable to the losing party. *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 886–87 (7th Cir.2001). Accordingly, although the parties dispute the circumstances surrounding the confiscation of Musgrove's legal files, we recite the facts as he described them at trial.

On April 22, 1997, Musgrove was transported–along with many of his legal pa-

pers–from Stateville Correctional Center where he was confined to the Will County courthouse for a court appearance. When Musgrove was returning to the van after the court appearance, he attempted to escape but was apprehended immediately. Upon his return to the prison, Assistant Warden Dwayne Clark took Musgrove to the internal affairs room, where he conducted an investigation into Musgrove's thwarted escape. Musgrove was later taken from the internal affairs room and placed overnight in a "strip cell," where jailors removed his clothes and placed him on suicide watch. While in the strip cell Musgrove saw Warden George DeTella and asked him to return the documents that had been in the van, but DeTella refused. That same evening Lieutenant Scott Lohiser received an order–apparently from DeTella–to shakedown Musgrove's cell and remove all paperwork, which was apparently a typical response to an escape attempt. After retrieving the paperwork Lohiser gave it to Lieutenant Roger Hayes. Musgrove was transferred to another prison the next day and has never returned to his cell at Stateville. The documents Musgrove left in the van and those that were taken from his cell were not returned to him until August 2000.

That is the gist of Musgrove's suit, but the case has a protracted history that we will recount only briefly. When Musgrove filed his complaint in December 1997, Judge Coar enlisted counsel to represent him, denied defendants' motion to dismiss the complaint for failure to state a claim, and entered a preliminary injunction directing defendants to return Musgrove's legal documents. The case was then transferred to Judge Pallmeyer. Defendants moved for summary judgment based on Musgrove's asserted failure to exhaust his administrative remedies, see 42 U.S.C. § 1997(a), but Judge Pallmeyer denied the motion. Defendants later moved again for summary judgment, this time arguing that Musgrove could not demonstrate actual injury resulting from the dilatory return of his legal files and that, regardless, none of them were personally involved in any possible deprivation of Musgrove's rights. That motion was also denied. After several postponements trial proceeded in September 2001.

At trial Musgrove described three lawsuits that, without his missing documents, he was unable to file before the statute of limitations expired. The first would have claimed that *The Joliet Herald*, a local newspaper, defamed Musgrove by publishing an article summarizing an indictment charging him with defrauding fellow inmates. The second planned lawsuit would have alleged that prison guard Manning violated the Eighth Amendment by keeping Musgrove tightly handcuffed for several hours without clothing. Musgrove testified that without his documents he had not remembered enough about the incident to sue Manning. And, finally, Musgrove intended to sue prison guard Burns for injuries sustained–choking, shortness of breath, gagging, watery eyes, and a burning nose–when Burns discharged mace to subdue an inmate in a neighboring cell. According to Musgrove, before his documents were confiscated he prepared a complaint for another inmate who alleged identical facts in a putative class action entitled *Muhammad v. Burns*, but Musgrove had never joined that suit and contended that he lost his chance to sue Burns directly because his inability to access his paperwork prevented him from learning that the class certification had been denied.

Musgrove also called defendants DeTella, Clark, and Lohiser to testify. DeTella testified that, while it was common practice to examine documents for contraband following an escape attempt, any non-con-

traband documents should have been returned promptly to Musgrove. DeTella also testified that inmates cannot possess personal property in the strip cell. DeTella and Clark both denied ordering Lohiser to remove the documents from Musgrove's cell. Lohiser maintained that he saw Lieutenant Hayes remove the documents from the cell but that Hayes never said where he was taking them. All three defendants testified that they did not know what happened to Musgrove's documents after they were taken from his cell or why they were not returned until August 2000. Musgrove included Hayes on his witness list but did not subpoena him for trial, and Judge Pallmeyer refused to allow a midtrial subpoena.

At the conclusion of Musgrove's case, Judge Pallmeyer granted defendants' motion for judgment as a matter of law, concluding that Musgrove had not shown actual injury with respect to his missed lawsuits and noting that, even if he had, a jury could not reasonably find that any of the named defendants were responsible. Judge Pallmeyer reasoned that the suit against *The Joliet Herald* was frivolous and so could not serve as the basis for an access-to-courts claim. She also concluded that Musgrove could have sued Sergeant Manning even without his documents, because he had recited the events leading up to the alleged Eighth Amendment violation in a *pro se* motion filed in a separate case that he could have retrieved from the court (he admits he had the case number even after his documents were confiscated) or from the attorney appointed to represent him in that case. And with regard to not suing Burns, Judge Pallmeyer adopted defendants' conclusion–which was not rebutted by Musgrove's attorneys–that because class certification was not denied until July 2000 and the statute of limitations was tolled while the certification motion was pending, Musgrove still had time to file an independent action against Burns.

Musgrove appeals *pro se*, arguing principally that Judge Pallmeyer erred by granting defendants' Rule 50(a) motion. Musgrove asserts that he proved actual injury with regard to his intended suits against Manning and Burns (Musgrove abandons his claim as to the unfiled defamation action), but concerning Manning he identifies no dispute with the district court's analysis. As to Burns, Musgrove contends–and the defendants admit–that class certification in *Muhammed v. Burns* was actually denied in October 1997, so the statute of limitations expired in October 1999. Since he did not learn about that ruling because he did not have access to his documents, Musgrove argues, he was unable to timely file his own suit against Burns.

Initially, we note that after *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), this case would never have gone to trial and instead would have been dismissed for failure to state a claim. As the Supreme Court explained in *Lewis v. Casey*, 518 U.S. 343, 349–53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), and reiterated in *Christopher*, 536 U.S. at 415, 122 S.Ct. 2179, a prisoner claiming that he was denied access to the courts must prove that he suffered an actual injury by showing that unjustified acts or conditions hindered his ability to pursue a nonfrivolous legal claim. To avoid dismissal at the complaint stage under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the plaintiff "must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003). Allegations sufficient to plead specific prejudice might include missed court

deadlines, failure to make timely filings, or dismissal of legitimate claims. *Ortloff,* 335 F.3d at 656.

In his amended complaint drafted by counsel, Musgrove failed to identify any *nonfrivolous* claim that was lost because of the defendants. Rather, he alleged only that by confiscating his legal files defendants have kept him "from consolidating his defenses and filing numerous motions in the courts relative to civil and pending criminal cases." In *Ortloff* we stated that a prisoner's allegation that confiscation of his legal documents "severely prejudiced and adversely affected his ability to prosecute at least three pending lawsuits" was insufficient to state an access-to-courts claim. 335 F.3d at 655. Musgrove's complaint is no better.

Nevertheless, this case comes to us on appeal of the district court's grant of a Rule 50(a) judgment as a matter of law, and we review that decision *de novo. Murray,* 252 F.3d at 886. Under Rule 50(a), a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed R. Civ. P. 50(a); *see also Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The standard for granting judgment as a matter of law "mirrors" the standard for granting summary judgment. *Id.* at 150, 120 S.Ct. 2097 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ We agree with defendants that the district court properly granted their Rule 50(a) motion because Musgrove had no evidence of actual injury. With regard to his intended suit against Manning, Musgrove could have filed a suit even without the missing documents. A prisoner filing an Eighth Amendment claim need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). And a *pro se* complaint is liberally construed, *see Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001), so Musgrove need only have provided brief details about the alleged Eighth Amendment violation. Judge Pallmeyer correctly concluded that Musgrove could have obtained details about the incident from the unrelated *pro se* document he filed. We note too that Musgrove's administrative grievances challenging Manning's conduct were not resolved until after his documents were confiscated, and Musgrove received copies of his grievances along with the prison's response. Since Musgrove could have retrieved the relevant facts from either set of documents, his theory that his missing documents kept him from filing suit is frivolous.

■ Musgrove's contention that he was unable to file an individual suit against Burns is equally frivolous. Musgrove could have filed an individual suit at any time, and the district court would have consolidated it with the pending class action. But even if his inability to access his documents had hindered his ability to file an individual suit, Musgrove offered no evidence that the case would not have been frivolous, and hindrance of a frivolous claim cannot result in actual injury. *See Christopher,* 536 U.S. at 415, 122 S.Ct. 2179. The use of mace is not a *per se* violation of the Eighth Amendment, and it can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate. *Soto v. Dickey,* 744 F.2d 1260, 1270–71 (7th Cir.1984). The use of mace violates the Eighth Amendment only if it is used "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.* At no point has Musgrove of-

fered any evidence showing that the circumstances in which Burns sprayed the mace did not justify its use or that Burns used an excessive amount of the chemical agent. *See id.* (holding that without such evidence an inmate cannot bring a successful Eighth Amendment claim). Accordingly, Judge Pallmeyer correctly concluded that Musgrove had presented no evidence permitting a jury to conclude that he had been denied access to the courts with regard to his prospective suit against Burns. And in light of our agreement with the district court that Musgrove offered no evidence of prejudice, we need not address his remaining arguments.

AFFIRMED.