Julian **SAMUELS**, Plaintiff,

v.

**BUREAU OF PRISONS**, Defendant.

**Civil Action No. 06–40085–RCL.**

United States District Court,
D. Massachusetts.

July 27, 2007.

---

**3.** If Plaintiff decides to proceed, she would be well advised to consult and, if possible, retain counsel.

Jennifer C. Boal, Anton P. Giedt, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT BUREAU OF PRISONS' MOTION TO DISMISS

LINDSAY, District Judge.

Before me is a motion to dismiss the complaint of pro se plaintiff Julian Samuels ("Samuels" or the "plaintiff"), an inmate at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). Samuels alleges that certain of his personal property was lost during his transfer to FMC Devens from the Special Housing United ("SHU") at the Federal Corrections Institute in Fairton, New Jersey ("FCI Fairton"). He filed the present complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680 ("FTCA"), against the Bureau of Prisons ("BOP"), seeking damages for the allegedly misplaced property.[1] Citing 28 U.S.C. § 2680, the BOP asserts that the FTCA does not apply to the detention of property by law enforcement officers at federal prison facilities, and that the sovereign immunity of the United States for claims of the kind brought by Samuels, therefore, has not been waived. On this basis, the BOP contends that the re-styled complaint fails as a matter of law and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject-matter jurisdiction and for failure to state a claim respectively.

## I. BACKGROUND

Samuels is currently serving a 248 month sentence for possession with intent to deliver cocaine base, possession of more than five grams of cocaine base within 1,000 feet of a school, and for being a felon in possession of a firearm. He was sentenced on July 17, 2004 and began his incarceration at FCI Fairton on August 2, 2004. He was designated for transfer to FMC Devens on February 22, 2005 and arrived there on May 3, 2005. Samuels claims that following an inventory of his property at FMC Devens, he found several items missing. He filed an administrative claim on July 18, 2005 with respect to the items he alleges to have been missing. In that claim, he asserted that the missing property was valued at $2085.55. After an investigation, the BOP denied the claim, asserting that it could not reconcile the plaintiff's claimed losses with available property inventory records and that Samuels could not otherwise provide evidence of all of his claimed losses. When settlement negotiations between the parties failed, Samuels commenced the present action.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

 Because "the United States, as sovereign, may not be sued without its consent, [j]urisdiction must be found in an express Congressional waiver of immunity or consent to be sued." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995) (internal citations omitted). On both a 12(b)(1) motion to dismiss founded on considerations of sovereign immunity and a 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all well pleaded factual allegations in the

1. This action was originally filed as a habeas petition pursuant to 28 U.S.C. § 2241. The "petition" named as respondents the BOP and several of its employees. By an order entered June 21, 2006, I directed that the clerk recharacterize this matter as a non-habeas civil action. Accordingly, the case proceeds before me as one brought against the BOP pursuant to the Federal Tort Claims Act, 28 U.S.C. § § 1346(b) and 2671–2680.

complaint and draw all reasonable inferences in favor of the plaintiff. *Toledo v. Sanchez*, 454 F.3d 24, 30 (1st Cir.2006); *Cordero–Hernandez v. Hernandez–Ballesteros*, 449 F.3d 240, 244 n. 3 (1st Cir. 2006); *Murphy*, 45 F.3d at 522. The Supreme Court has recently said, however, that a "formulaic recitation of the elements of a cause of action will not do," *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)), because "[f]actual allegations must be enough to raise a right to relief above the speculative level [assuming] that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and internal quotation omitted). Thus, to survive a motion to dismiss under Rule 12(b)(1) and (6), the complaint must state a plausible claim for relief over which the court has jurisdiction. *Id.* at 1974; *see Murphy*, 45 F.3d at 522. *See also Arturet Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 (1st Cir.2005) ("allegations of the complaint are generally to be taken as true for purposes of a motion to dismiss, and the complaint should not be dismissed if a claim can plausibly be embraced by those allegations").

## B. The Language of the Federal Tort Claims Act

The FTCA constitutes a limited waiver of sovereign immunity under which the United States may be held liable for claims for money damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "This waiver of sovereign immunity itself has exceptions, which 'define the limits of federal subject matter jurisdiction in this area.'" *Montijo–Reyes v. United States*, 436 F.3d 19, 24 (1st Cir.2006) (quoting *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir.1987)). *See Rakes v. United States*, 442 F.3d 7, 18 (1st Cir.2006) ("Courts have no jurisdiction over claims against the federal government, except where the government has expressly waived its immunity.").

■ Section 2680(c) of the FTCA excepts from the waiver of sovereign immunity "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise or other property by any officer of customs or excise or any other law enforcement officer."[2] The BOP argues

---

**2.** As amended in 2000, Pub.L. 106–185, § 3(a) (2000), the exception contained in 28 U.S.C. § 2680(c) itself provides for certain exceptions not relevant in the circumstances of this case. The amendment also, *inter alia*, substituted "law enforcement" for "law-enforcement." *See id.* As the amended version of the statute was in effect at the time of the events giving rise to this claim, I use "law enforcement" throughout the course of this opinion, but I have not altered the language in quotes from opinions written prior to 2000. Furthermore, when Congress amended this section, it was presumably aware of the in- consistent construction given the phrase "any other law enforcement officer" by the various circuit Courts of Appeal, *see Sierra Club v. Sec'y of Army*, 820 F.2d 513, 522 (1st Cir. 1987) ("Customarily, Congress is thought to be aware of an existing statutory construction"), but chose to repeat the phrase "any officer of customs or excise or any other law enforcement officer" without elucidating its meaning. I therefore rely on cases decided both prior and subsequent to the 2000 amendment. *Cf. id.* ("Words and provisions used in the original act or section are pre-

that its officers are included in the category described by the words "any other law enforcement officer," that for this reason sovereign immunity is not waived for claims against BOP officers, and that the plaintiff's claim is therefore barred. The Supreme Court in *Kosak v. United States,* 465 U.S. 848, 852 n. 6, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) expressly reserved the question raised by the BOP's contention ("We have no occasion in this case to decide what kinds of 'law-enforcement officer[s],' other than customs officials, are covered by the exception" (quoting 28 U.S.C. § 2680(c))). The circuits are split on the issue. *See, e.g., Andrews v. United States,* 441 F.3d 220, 227–28 (4th Cir.2006) (discussing holdings of the various Circuit Courts of Appeal); *Solis–Alarcon v. United States,* 432 F.Supp.2d 236, 249 (D.P.R. 2006) (same). The Fourth, Sixth, Seventh, and District of Columbia circuits have held that "any other law enforcement officer" in § 2680(c) refers only to law enforcement officers working in the enforcement of tax or customs laws. *See Andrews,* 441 F.3d

at 227; *Ortloff v. United States,* 335 F.3d 652, 658 (7th Cir.2003); *Bazuaye v. United States,* 83 F.3d 482, 486 (D.C.Cir.1996); *Kurinsky v. United States,* 33 F.3d 594, 598 (6th Cir.1994). The Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have interpreted the language more expansively. *See, e.g., Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804, 807 (9th Cir.2003) (holding that BOP officers are law enforcement officers for the purposes of § 2680(c)); *Chapa v. U.S. Dep't of Justice,* 339 F.3d 388, 390 (5th Cir.2003) (same); *Hatten v. White,* 275 F.3d 1208, 1210 (10th Cir.2002) (same); *Cheney v. United States,* 972 F.2d 247, 248 (8th Cir.1992) (holding claim against federal drug task force officer based on seizure of property in course of search barred by § 2680(c)'s "broad exception to the FTCA's general waiver of sovereign immunity"); *Schlaebitz v. United States Dep't of Justice,* 924 F.2d 193, 195 (11th Cir.1991) (concluding that claim against marshals acting within their lawful authority is banned by § 2680(c)).[3]

sumed to be used in the same sense in the amendment. Moreover, the legislature is presumed to know the prior construction of the original act, and if words or provisions in the act or section amended that had been previously construed are repeated in the amendment, it is held that the legislature adopted the prior construction of the word or provision.") (internal citations omitted).

3. The Federal Circuit is often grouped with the circuits that have interpreted § 2680(c) expansively because that court ruled in *Ysasi v. Rivkind,* 856 F.2d 1520, 1525 (Fed.Cir. 1988) that the plaintiff's claim against INS Border Patrol officers was barred by this subsection. A more careful reading of the decision, however, reveals that the court's holding is in fact consistent with the reasoning of the circuits limiting the reach of the "any other law enforcement officer" language. The *Ysasi* court held specifically that the violations in issue in the case before it were similar to violations of the customs laws and that "seizures pursuant to [8 U.S.C.] § 1324(b)(1) are

'sufficiently akin to the functions carried out by Customs officials to place the agents' conduct within the scope of section 2680(c).' " *Id.* (quoting *Formula One Motors, Ltd. v. United States,* 777 F.2d 822, 824 (2d Cir.1985)). *Compare Andrews v. United States,* 441 F.3d 220, 227 (4th Cir.2006) ("we conclude that the phrase ... is limited to those officers acting in a tax or customs capacity"); *Ortloff v. United States,* 335 F.3d 652, 658 (7th Cir. 2003) ("exception ... applies only to law enforcement officers performing functions related to customs and excise duties"); *Bazuaye v. United States,* 83 F.3d 482, 486 (D.C.Cir.1996) ("language *exempts from the FTCA only those claims arising from the actions of a federal law-enforcement officer who, while not officially a customs or tax officer, is acting under the authority of the tax or customs laws*"); *Kurinsky v. United States,* 33 F.3d 594, 597 (6th Cir.1994) (" § 2680(c) must be read as only applying to law enforcement officers engaged in activities with a nexus to the collection of taxes or customs duties") *with, e.g., Bramwell v. U.S. Bureau of Prisons,* 348 F.3d

There are no First Circuit decisions interpreting this language, though as noted by a judge of the United States District Court for the District of Puerto Rico, two district courts within the First Circuit have addressed the meaning of § 2680(c). *See Solis–Alarcon,* 432 F.Supp.2d at 249 & n. 6. In *Hydrogen Technology Corp. v. United States,* 656 F.Supp. 1126, 1128 (D.Mass.1987), Judge McNaught of this district determined that where law enforcement officers are acting outside the excise/customs context, recovery under the FTCA is not barred by § 2680(c). In *Cardona Del Toro v. United States,* Judge Perez–Gimenez of the District of Puerto Rico reached a contrary conclusion, holding—without discussion—that § 2680(c) bars an FTCA claim arising out of a warrantless search and seizure of property by FBI agents. 791 F.Supp. 43, 45, 47 (D.P.R.1992), *aff'd* without discussion, 983 F.2d 1046, 1993 WL 9733 (1st Cir. Jan. 19, 1993). More recently, Judge Casellas of the District of Puerto Rico, after extended analysis of the question, concluded that "the language 'any other law enforcement officer' in § 2680(c) refers to any other law enforcement officer working in an excise or customs capacity." *Solis–Alarcon,* 432 F.Supp.2d at 251.

As I shall explain, after careful analysis of the statutory language I am persuaded by the reasoning of the Fourth, Sixth, Seventh and District of Columbia Circuits, as well as *Solis–Alarcon,* the most recent opinion issued within this circuit. As the Seventh Circuit observed in *Ortloff,* "[w]hile the quantity of circuits favors the government's position, the quality of decisions favors" the contrary conclusion. 335 F.3d at 659. *See Kurinsky,* 33 F.3d at 598

(noting that cases concluding that other law enforcement officer language "includes $_{all}$ types of officers, whatever their duties ... have not articulated a clear reason for this holding, and have often stated their conclusions with little or no analysis"). *Cf. Hatten,* 275 F.3d at 1210 (neglecting to explain reasoning); *Cheney,* 972 F.2d at 248 (same).

**C. Principles of Statutory Construction**

*1. The text of the statute.*

■ "Where statutory interpretation is in prospect, the jumping-off point always is the text of the statute itself." *United States v. Nason,* 269 F.3d 10, 16 (1st Cir. 2001). "If statutory language points to a plain and unambiguous meaning, courts are bound to follow that signpost—at least as long as that revealed meaning is neither unreasonable nor absurd." *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

To determine whether "any other law enforcement officer," in the text excepting from the United States' waiver of sovereign immunity "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer," is meant to be read expansively to include $_{all}$ law enforcement officers acting within the scope

804, 807 (9th Cir.2003) (concluding that because they are considered "law enforcement officers" under several other statutes, BOP employees are except from liability under § 2680(c)); *Chapa v. U.S. Dep't of Justice,* 339

F.3d 388, 390 (5th Cir.2003) (same); *Schlaebitz v. U.S. Dep't of Justice,* 924 F.2d 193, 194 (11th Cir.1991) (" 'other law enforcement officer' may include officers in other agencies performing their proper duties").

of their duties no matter the context, or whether the phrase includes only law enforcement officers performing customs or excise functions, I turn to established cannons of statutory construction. In applying them, I have kept in mind the Supreme Court's directive that courts must construe statutory phrases not in isolation, but in view of the statute as a whole. *See United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984); *see also Ortloff,* 335 F.3d at 658 ("we cannot parse the 'any other law enforcement officer' language from the remainder of § 2680(c), but rather that language must be read as part of the totality of § 2680(c)").

■ I begin with "the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Vill., Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *see Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (in interpreting statutes, courts "should disfavor interpretations of statutes that render language superfluous"); *Nason,* 269 F.3d at 16 (applying this rule and concluding that a modifying clause "cannot be dismissed as mere surplusage"). The BOP suggests that because Congress considers BOP employees to be law enforcement officers for various purposes, *see Chapa,* 339 F.3d at 390 (discussing the inclusion by Congress of BOP employees as "law enforcement officers" for purposes of eligibility for Civil Service premium pay, retirement benefits, and survivorship annuities, among other things), the "any other law enforcement officer" language of § 2680(c) includes BOP employees. If this is true, however, the words "any officer of customs or excise," which precede "or any other law enforcement officer," become unnecessary, as officers acting in customs or excise capacities would fall within the broader

category. Such a result would run contrary to this fundamental canon of statutory construction. *See Nordic Vill., Inc.,* 503 U.S. at 36, 112 S.Ct. 1011; *Nason,* 269 F.3d at 16. *See also Ortloff,* 335 F.3d at 659 ("reading the exception so broadly that it includes all other law enforcement officers would render superfluous the 'any officer of customs or excise' language, since such officers would clearly be covered by the broad 'any other law enforcement officer' language").

■ In concluding that phrase "any other law enforcement officer" in § 2680(c) applies only to law officers acting in the customs or excise context, other federal Courts of Appeals have applied the "related canons" of *ejusdem generis* and *noscitur a sociis,* which "remove the phrase from the abstract and give it the meaning the context demands." *Andrews,* 441 F.3d at 223. *See Ortloff,* 335 F.3d at 658–59 (applying these principles); *Bazuaye,* 83 F.3d at 484 (same); *Kurinsky,* 33 F.3d at 596–97 (same). Pursuant to the principle of *ejusdem generis,* or "[o]f the same kind, class or nature," *see, e.g., Ortloff,* 335 F.3d at 658–59, a "general word or phrase [that] follows a list of specifics ... will be interpreted to include only items of the same type as those listed." *Andrews,* 441 F.3d at 223 (quoting Black's Law Dictionary 556 (8th ed.2004)). *See Bazuaye,* 83 F.3d at 484 (principle of *esjudem generis* "suggests that a general term should be read in light of the more specific terms preceding it"). The principle of *noscitur a sociis,* or "[i]t is known from its associates," *Kurinsky,* 33 F.3d at 597 n. 3, instructs that "the meanings of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it." *Id.* (quoting Black's Law Dictionary 956 (5th ed.1979)). *See Andrews,* 441 F.3d at 224 *(noscitor a sociis* canon, which instructs that the "mean-

ing of an undefined word or phrase 'should be determined by the words immediately surrounding it' ... infuses into 'law enforcement officer' a meaning [gathered] from the words around it'" (quoting BLACKS LAW DICTIONARY 1987 (8th ed.2004) and *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961))). The *Kurinsky* court, for example, recognized that the parallel clauses of § 2680(c) "dwell exclusively on customs or taxes, except for the final references to other law-enforcement officers." 33 F.3d at 597. As such, "[t]he 'any other law-enforcement officer' phrase should be viewed as Congress' recognition of the fact that federal officers, other than customs and excise officers, sometimes become involved in the activity of detaining goods for tax or customs purposes." *Id.* (internal citation omitted). The *Ortloff* court applied the two principles to determine that "in light of § 2680(c)'s specific reference to claims arising out of the 'collection of any tax or customs duty,' and the class of officers identified, namely[,] 'any officer of customs or excise,' the 'any other law enforcement officer' language thus means any other law enforcement officers performing functions related to customs or excise." 335 F.3d at 659. *See Andrews*, 441 F.3d at 224–25 (recognizing that both customs and excise officers "are charged with the function of enforcing the revenue laws," that the opening clause of § 2680(c) refers solely to claims "arising from the specific actions of assessing or collecting a tax or customs duty," and that both clauses "dwell exclusively on customs and taxes").

With the principles of *ejusdem generis* and *noscitur a sociis* in mind, I conclude that, in light of the repeated reference in § 2680(c) to the excise and customs context, the phrase "any other law enforcement officer," properly construed, refers to law enforcement officers acting in the tax or customs capacity. *See Robinson*, 519 U.S. at 341, 117 S.Ct. 843 (determining the meaning of statutory language includes referencing its specific context). Under this interpretation, a Drug Enforcement Agency "officer detaining property to enforce the customs law is a 'law enforcement officer' because he is performing a function similar to an 'officer or customs or excise,'" but a BOP officer transporting Samuels' personal property in the course of his transfer between facilities "would not be a 'law enforcement officer' [within the meaning of § 2680(c)] because he is not performing a customs or excise function." *Andrews*, 441 F.3d at 224.

■ Courts concluding that the "any other law enforcement officer" language should be read expansively have relied on the multiple contexts in which Congress has included BOP employees as "law enforcement officers," *see, e.g., Bramwell*, 348 F.3d at 807; *Chapa*, 339 F.3d at 390, and on the *in pari materia* canon, under which "neighboring statutory subsections that refer to the same subject matter must be read ... as if they were a single statute." *Andrews*, 441 F.3d at 226. *See, e.g., Bramwell*, 348 F.3d at 807; *Chapa*, 339 F.3d at 390. Applying the principle of *in pari materia*, courts have imported into § 2680(c) both the statutory definition set forth in § 2680(h)[4] and court decisions interpreting that language. *See Bram-*

---

**4.** 28 U.S.C. § 2680(h) provides, in pertinent part, for a waiver of sovereign immunity for any claim arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution by "investigative or law enforcement officers of the United States Government," and provides further that "[f]or the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

*well,* 348 F.3d at 807 (noting that although "law enforcement officer" is not defined in § 2680(c), it is defined in § 2680(h), which has been interpreted by the United States Supreme Court to include BOP officers,[5] and that because the phrase "appears in neighboring subsections (c) and (h), the phrase should be construed similarly in cases arising under both exceptions"); *Chapa,* 339 F.3d at 390 (observing that the Supreme Court has held that § 2680(h) includes BOP officials and that "the two sections should be considered *in pari materia*" such that the holding of that case is "instructive in construing the term" under § 2680(c)). *Cf. Andrews,* 441 F.3d at 226 (observing that § 2680(h) defines "'investigative or law enforcement officer' in terms that encompass BOP officers"). Reading into subsection (c) a definition appearing in subsection (h), however, disregards Congress' explicit limitation in the text of § 2680(h) of that definition to "the purpose of this subsection" and is thus improper. *See Sierra Club v. Sec'y of Army,* 820 F.2d 513, 522 (1st Cir.1987) ("Unless the language of a statute itself points in a contrary direction, courts are bound to interpret it consistent with the legislative intent, if discernible."). "After all, when Congress inserts limiting language [or, in this case, expansive language] in one section of a statute but abjures that language in another, closely related section, the usual presumption is that Congress acted deliberately and purposefully in the disparate omission." *Nason,* 269 F.3d at 17.

*2. Statutory Purpose*

Consideration of the purpose of the FTCA reinforces my conclusion. As noted

by the D.C. Circuit, limiting the exception contained in § 2680(c) to law enforcement officers acting in the customs or excise capacity is consistent with the rationale underlying the exception. The court concluded, "Congress carved out the various § 2680 exceptions, at least in part, in order to preclude tort suits against the government when other 'adequate remedies' were already available." *Bazuaye,* 83 F.3d at 484–85 (quoting *Kosak,* 465 U.S. at 858, 104 S.Ct. 1519). At the time the FTCA was adopted in 1948, adequate remedies were already available for claims against federal officers carrying out the customs and tax laws, including lawsuits for negligent damage to detained goods or improper seizure of money or property. *Id.* at 485. The same was not true for plaintiffs injured by federal officers acting in law enforcement capacities outside of the customs or excise contexts. *See id.* at 485–86 (discussing evolution of these causes of action over time, from personal actions against individual customs officers or tax collectors to the removal and indemnification process protecting individual federal officers engaged in customs or tax work such that these suits were effectively transformed into actions against the government). *See also Andrews,* 441 F.3d at 225 ("Because 'adequate remedies' existed for claims arising from the enforcement of the customs or tax laws, it was unnecessary to include those claims within the FTCA's waiver of sovereign immunity. Conversely, at the time of the FTCA's enactment, plaintiffs enjoyed no similar right to sue law enforcement officers acting outside a customs and tax enforcement capacity"); *Kurinsky,* 33 F.3d at 597–98

---

**5.** It is important to note that the Supreme Court's interpretation of § 2680(h) to include BOP officers provided a cause of action against the United States for victims of unlawful conduct, *see Carlson v. Green,* 446 U.S.

14, 17, 20, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), whereas interpreting § 2680(c) to include BOP officers would preclude such a cause of action.

(discussing the "little legislative history there is" of § 2680(c) and noting that it is consistent with the court's conclusion that the exception applies only to law enforcement officers engaged in activities with "a nexus to the collection of taxes or customs duties"). In view of this broader context, the phrase "any other law enforcement officer" in § 2680(c) is properly limited to law enforcement officers performing customs or excise functions.

## III. CONCLUSION

For the reasons discussed herein, I conclude that a BOP officer is not immune to suit as "any other law enforcement officer" pursuant to 28 U.S.C. § 2680(c) and that the court therefore has subject matter jurisdiction pursuant to the FTCA. Taking the plaintiff's allegations as true, I determine that he has stated a plausible claim for relief. *See Bell Atlantic*, 127 S.Ct. at 1974. The defendant BOP's motion to dismiss is hereby DENIED.

SO ORDERED.